**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jacques M. SCHIFFER, Defendant-Appellant.**

**No. 15886.**

United States Court of Appeals Sixth Circuit.

Sept. 9, 1965.

Harvey M. Silets, Chicago, Ill., for appellant; Charles R. Purcell, Jr., Chicago, Ill., of counsel.

Theodore George Gilinsky, Department of Justice, Washington, D. C., Herbert J. Miller, Jr., Asst. Atty. Gen., Robert S. Erdahl, Attorney, Dept. of Justice, Washington, D. C., John H. Reddy, U. S. Atty., Chattanooga, Tenn., on brief, for appellee.

Before WEICK, Chief Judge, and MILLER and EDWARDS, Circuit Judges.

WEICK, Chief Judge.

This is an appeal from an order of the District Court adjudging Appellant Schiffer guilty of criminal contempt and imposing upon him a sentence of sixty days' confinement and a fine of $1,000. The sentence was later corrected by striking therefrom the fine.

Schiffer was Thomas Ewing Parks' attorney in the case of United States v. Hoffa, in which the defendants were tried and convicted for jury tampering. These convictions were affirmed by this Court. 349 F.2d 20 (1965). Immediately after the defendants in the Hoffa case were sentenced, the trial judge read into the record a contempt certificate made pursuant to Rule 42(a) Federal Rules of Criminal Procedure.[1] After permitting Schiffer to make a statement, the Court imposed sentence. Motion for a new trial was later filed and denied.

The contempt certificate set forth under four headings divided into sixteen parts the acts, statements and conduct of Schiffer during the six and one-half weeks' trial of the Hoffa case, which acts, statements and conduct took place in the actual presence of the Court and were seen or heard by it. The Court found that they constituted a deliberate and wilful attack upon the administration of justice, an attempt to prevent by improper means the functioning of the Court, and an attempt to degrade and debase the Court. The Court found that such conduct would be calculated to destroy all respect for the Court by attorneys and the public if it went unnoticed and unpunished. The Court regretted that he was compelled to take such action.

The District Judge in his certificate stated that full appreciation of the extent of misconduct and criminal contempt could only be learned by actual presence in the court room and actual observation of the manner in which Schiffer conducted himself throughout the trial. The Court made the entire record of the trial a part of the contempt proceedings in order that the specific acts of misconduct could be viewed in proper context.

The statements of Schiffer, found contemptuous by the Court, were his repeated charges that the Court was conducting a "drum head court martial", and "a star chamber proceeding". He stated that the Court's rulings "smacked of Stalinism, Hitlerism, Mussoliniism, and all these isms". These offensive and derogatory statements were made to the Court seven times during the course of the trial. On one occasion Schiffer accused the Court of "being used as a tool by the Government" to deprive the defendant of putting on his defense.

Schiffer further accused the Court of " * * * being used as an adjunct to the prosecutor to hide evidence * * * "

and stated:

"This is chicanery, not law."

He insinuated that the case was only "a trial technically begun." He stated that the prosecutor "runs to the aid of an affiliate, the Court".

He further accused the Judge of concealing evidence known by him to be perjured, and of keeping Schiffer's mouth closed so that he could not attack it.

He asked the Court to permit him to withdraw from the case and for the Court to defend his client because he was being prevented from defending him.

---

1. The contempt certificate is appended at the end of this opinion.

When the Court sustained an objection to the testimony of a witness in a collateral matter, Schiffer stated:

"Well, Your Honor, may I say this, if in this United States of America we have sunk to the low point in a United States court where a witness for the prosecution commits treason, with the knowledge of the prosecutor, and we are to be prohibited on defense from exposing that kind of a dirty, vicious deal, justice is finished in America."

The Court warned Schiffer to keep his voice down when he was shouting, and to stay within the law. He was also cautioned about arguing matters in the presence of the jury which were not appropriate for argument, and the Court indicated that the matter would be taken up at a later time.

It is not disputed here that Schiffer made the statements attributed to him in the presence of the Court.

■ Schiffer contends first that we have no jurisdiction to sustain the contempt order on the basis of any fact not specifically recited in the contempt order. We make no attempt to do so. Our opinion is based on the facts specifically set forth in the contempt certificate. The District Court made the entire record a part of the certificate in order that the remarks specifically set forth therein could be taken in context. This was in accord with the procedure followed in Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952). See also MacInnis v. United States, 191 F.2d 157 (C.A. 9, 1951), cert. denied 342 U.S. 953, 72 S.Ct. 628, 96 L.Ed. 708; Hallinan v. United States, 182 F.2d 880, 882 (C.A. 9, 1950), cert. denied 341 U.S. 952, 71 S.Ct. 1010, 95 L.Ed. 1375, rehearing denied 342 U.S. 956, 72 S.Ct. 623, 96 L.Ed. 710.

■ Appellant next contends that the conduct specifically set forth in the contempt certificate did not constitute criminal contempt. We do not agree. We think the remarks were contemptuous per se. Sacher v. United States, supra; Mac-

Innis v. United States, supra; United States v. Hall, 176 F.2d 163 (C.A. 2, 1949), cert. denied 338 U.S. 851, 70 S.Ct. 90, 94 L.Ed. 521. The fact that all except one of them did not take place in the presence of the jury did not make them any the less contemptuous. They were calculated to provoke and to bring undue pressure upon the Court in the making of various rulings during the course of the trial. They delayed the trial, obstructed the administration of justice and interfered with the Court in the performance of his judicial duties.

■ We realize that in contempt cases against lawyers the evidence must be carefully scrutinized in order that there be no undue interference with their right to properly represent their clients. In the present case the evidence must be viewed in the background of a bitterly contested trial charged with emotions, where things are sometimes said that should have remained unsaid. Here, however, we do not have an isolated outburst in the heat of a trial, but rather deliberate, continuous and repeated acts, extending throughout the trial, which were wholly unwarranted.

■ It may be conceded that Schiffer had full right to present forcefully to the Court his claims in order to obtain a ruling, even though the presentations may be far fetched and untenable. After he had obtained the ruling he had no right to resist it nor to insult the Judge. Sacher v. United States, supra. If he felt that a ruling was erroneous, he had an adequate remedy to review it by way of appeal. Schiffer not only resisted rulings, but he repeatedly insulted the Court. He made unfounded accusations reflecting on the dignity, integrity and impartiality of the Court. This conduct cannot be countenanced in a Federal Court.

The Supreme Court laid down guidelines in Sacher for counsel to follow in the trial of cases. They were not adhered to by Schiffer.

■■ We find no merit in the claim that since the Court did not bring the contempt charge at the time the acts were

committed, there was no obstruction of justice. There were many contemptuous acts. The Court could have punished Schiffer summarily at the time each of the acts was committed. Had he done so, it might have prejudiced the client, delayed the trial, or resulted in a mistrial. It was discretionary with the Court whether to act at the time or to postpone action until after the trial. Sacher v. United States, supra; MacInnis v. United States, supra. We find no abuse of discretion.

Unlike Sacher and Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), the Judge did not become personally involved or embroiled. He had no personal interest in holding Schiffer in contempt. The Court had infinite patience. He did not engage in wrangling or bickering with counsel. He did his utmost to preserve order and decorum.

It is argued that the Court did not warn Schiffer that the acts which he was repeatedly committing would be punished by contempt. As we pointed out before, the Court did state on one occasion that the matter would be taken up at a later time. He also told Schiffer to keep his voice down, to sit down, and to keep within the law.

 While warnings have been given by Courts in some of the cases,[2] and we deem this practice generally desirable, we do not believe warnings were essential where, as here, the conduct was clearly contemptuous. MacInnis v. United States, supra; 17 C.J.S. Contempt § 25, pp. 67, 68 (1963). In any event, in the context in which the Court stated that the matter would be taken up at a later time, we believe that no lawyer in the courtroom could have failed to understand that this was a warning pertaining to contempt.

Specification IV charged Schiffer with an attempt to evade personal guilt under 47 U.S.C. § 605 for disclosing intercepted communications by contriving to have the Court, rather than himself, reveal them.

Schiffer had filed a motion for a mistrial and delivered to the Court in a sealed envelope as an exhibit to the motion a transcript of radio communications of the F.B.I., which an expert in electronics, employed by Schiffer, had intercepted.[3] Schiffer served a copy of the motion on counsel for the Government, but not of the exhibit. The Court, not being informed of what the envelope contained, opened it, read the exhibit and made it a part of the record. Schiffer stated at a hearing that he had not given a copy to the Government "because of the subject matter which it contained in view of the state of the law which we did not want anything published."

At a later date Schiffer sought a second time to tender additional sealed F.B.I. radio communications, but the Court refused to receive them unless they were tendered in open court. No one was willing to divulge the contents of the exhibit unless the Court would order it opened. This the Court declined to do.

Schiffer believed it would be unlawful if he [Schiffer] divulged the intercepted radio communications, and therefore he endeavored to have the Court make the disclosure without informing the Court of his purpose and of the consequences. He persisted by making a second tender of additional communications.

 It is urged that in order to determine whether this conduct constituted contempt, it would be necessary to consider evidence which took place out of the presence of the Court. We do not think so.

The acts of Schiffer which he committed in open court, in our opinion, constituted contempt. He was trifling with the Court and making its processes a

---

2. Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); Sacher v. United States, supra; Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949).

3. The background concerning the interceptions appears in our opinion in United States v. Hoffa, supra, and need not be repeated here.

mockery. Cf. Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933).

Lastly, Schiffer contends that the District Court was without jurisdiction to correct the sentence after the appeal had been taken. Berman v. United States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937). We think this point is without merit.

The sentence as originally imposed was illegal since only a fine *or* imprisonment may be imposed for criminal contempt. 18 U.S.C. § 401; In re Bradley, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 500 (1943).

Rule 35, Federal Rules of Criminal Procedure, provides that "[t]he court may correct an illegal sentence at any time". Cf. Corey v. United States, 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963).

■ The appeal was actually taken in the present case before the motion for a new trial had been passed on by the District Court. This did not prevent the District Judge from ruling on the motion for a new trial. We think he also had jurisdiction to correct the illegal sentence.

■ The sentence as corrected was within the permissible limits for a petty crime. 18 U.S.C. § 1. Schiffer was not entitled to a jury trial. United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964).

Affirmed.

## APPENDIX

---

### IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, SOUTHERN DIVISION

UNITED STATES OF AMERICA

vs.

JACQUES M. SCHIFFER

Criminal No.

12010

### CONTEMPT CERTIFICATE

---

Pursuant to Rule 42(a), Federal Rules of Criminal Procedure, 18 U.S.C., I hereby certify that the following criminal contempt was committed in the actual presence of the Court and was seen or heard by the Court during the trial of the case of United States v. Hoffa, D.C., 235 F. Supp. 611, which trial commenced upon January 20, 1964, and continued from day to day thereafter through March 6, 1964.

I find that the acts, statements, and conduct of Jacques M. Schiffer, the defendant in this contempt petition, hereinafter specified constitute (1) a deliberate and wilful attack upon the administration of justice, (2) an attempt to prevent by improper means the functioning of this Court, (3) an attempt to degrade and debase this Court, and (4) such misconduct by an attorney-at-law in practice before this Court as would be calculated to destroy all respect for this Court both by attorneys-at-law in practice before this Court and by members of the general public if such misconduct went unnoticed and unpunished by this Court.

Jacques M. Schiffer was the attorney of record in the above entitled cause of United States v. Hoffa, on behalf of the defendant, Thomas Ewing Parks, and appeared upon his behalf each day throughout the trial. By reason of his misconduct as hereinafter set forth the task of maintaining order and proceeding with a proper and fair trial was rendered extremely difficult. A full appreci-

ation of the extent of the misconduct and criminal contempt of the defendant, Jacques M. Schiffer, can only be learned by actual presence in the court room throughout this trial and actual observation of the manner in which Mr. Schiffer conducted himself and actual hearing of the matters stated by him throughout the trial. As isolated quotations from or references to the transcript can give but a partial view of the acts, statements and conduct herein referred to, I hereby make the entire record a part of this proceeding.

I. Mr. Schiffer repeatedly and throughout the trial of this case engaged in abusive and insulting argument to the Court, wilfully and deliberately seeking to provoke the Court into taking action that might form a basis for some alleged error or cause delay in the trial or form some basis for a mistrial. He repeatedly charged the Court with operating a *"drum head court martial,"* conducting a *"star chamber proceeding,"* and suggesting that the Court's actions "smacked of Stalinism, Hitlerism, Mussoliniism, and all kinds of isms."

(a) Upon Wednesday, January 22, 1964, as set forth in Volume 4, p. 754 of the transcript, Mr. Schiffer stated in argument:

"I think what the government wants is not a fair trial guarantee(d) under the Constitution. They want a drum head court martial kind of trial or similar proceeding."

(b) On Monday, January 27, 1964, as set forth in Volume 7, p. 1375 of the transcript, Mr. Schiffer stated in argument:

"In no event can Mr. Parks select a jury of his peers as contemplated by the rules of American justice as laid down by the United States Supreme Court and I can only appeal to Your Honor that in all fairness that this man be afforded a fair trial within American principles and if he is to be deprived of his free voice and choice of who sits among his peers, then I say the government has succeeded in attempting, and has ac-

tually at this point managed, to secure a drum head court martial trial."

(This argument was made in response to the Court limiting peremptory challenges to alternate jurors to two in number, as expressly provided in Rule 24(c), Federal Rules of Criminal Procedure.)

(c) On Wednesday, February 5, 1964, as set forth in Volume 14, p. 3431 of the transcript, Mr. Schiffer in reference to a ruling of the Court with regard to an alleged Jencks Act document stated:

"Why it smacks of a star chamber proceeding where one is given what the government wants it to have and then deprived of what their ultimate defense can possibly be."

(d) On Friday, February 7, 1964, as set forth in Volume 16, p. 3835 of the transcript, Mr. Schiffer stated in argument:

"Number one, I advised the Court that the government from the inception of this case would try to run a drum head court martial case and not the kind of case contemplated by the American laws and rules of justice. What has happened here, Your Honor, day after day, has proved my point that this is precisely what the government wanted and they succeeded in obtaining it."

At p. 3840 in the same argument, Mr. Schiffer stated:

"I object to that. It has never happened in my experience. I have read about these things in cases and I object to this kind of procedure. That is the drum head court martial they wanted and they are getting it. They are getting it to the last vestige of the meaning of a drum head court martial and they are getting a star chamber proceeding here. Not a trial in a federal court of a man charged with a crime."

In the same argument at p. 3846, Mr. Schiffer stated:

"I will offer no objections to whatever the government wants to put into this case because the Court in

fact has stayed my tongue and the integrity and respect for a court of the United States stands equally with my house of worship to God and when I see someone defile that he better know he is in for a battle, but if I am to be stilled in making my proper objections and seeking a legal lawful procedure of American justice, then I state to Your Honor if I am not relieved I will make no objections to what I call a drum head court martial proceeding and this is the kind of thing I told the Court the government wanted in the beginning and in effect the Court is giving to them what they wanted."

(e) On Tuesday, February 11, 1964, as set forth in Volume 18, p. 4478 of the transcript, in response to a ruling of the Court that a hearing would be granted unto the defendants upon their motion with regard to alleged surveillance, but that the trial would not be interrupted at that particular point for the purpose of conducting the hearing, Mr. Schiffer in argument stated:

"It is only you in this case who has the initial power to remedy this evil and if this evil is not remedied now and a hearing held now, Your Honor is being used as a tool by the government and another agency of the government to see to it that in effect, in any legal true sense, Parks is deprived really from putting in his defenses which are guaranteed to him by the basic law of this country and I say this, that smacks of Stalinism and Hitlerism and Mussoliniism and all these isms that this country has spent all of its precious blood to keep away from our shores."

(f) On Tuesday, February 25, 1964, as set forth in Volume 28, p. 7199 of the transcript, in response to the Court making available to the defendants transcripts of telephone conversations, Mr. Schiffer in argument stated:

"What recourse is there to this except to say to the Court, as I said the last time, in the United States v. Berger case, I have spoken of it twice, which states what the rules of this kind of game are, that we are not playing a game, we are in a court of justice, that when the prosecution does these things the Court is not supposed to commend them. This is a foreign kind of thing they have introduced here. This is a Russian concept of justice. The Nazis."

As a part of the same argument at p. 7202, Mr. Schiffer stated:

"Your Honor will remember I called it, and I call it again for this purpose, that the government insisted on a drum head court martial. That is what we have now, right up to this point, and now that they are exposed they want Your Honor now to convert this further and feloniously, they now ask Your Honor to make it a star chamber proceeding and that is why I ask for the mistrial at this time."

II. Mr. Schiffer repeatedly charged this Court and another federal judge involved in proceedings related to this case, with aiding and assisting in the commission of perjury by witnesses or in the protection or concealment of alleged perjuries.

(a) On Wednesday, February 5, 1964, as set forth in Volume 14, p. 3430 of the transcript, in response to the action of this Court in making available to the defendants an affidavit of the witness Partin, Mr. Schiffer stated in argument:

"A judge [i. e., Judge William E. Miller, U.S. District Court, Middle District of Tennessee] sat in the first case knowing what was in the envelope and had continued the trial. I believe that was a violation of every concept of due administration of justice."

(b) On Thursday, February 13, 1964, as set forth in Volume 20, pp. 4934–4943 of the transcript, upon the Court quashing a *subpoena duces tecum* that was too broad upon its face, Mr. Schiffer engaged in prolonged argument upon an unrelated issue not then before the Court or in any wise then ruled upon by the Court in-

volving the admissibility of testimony on collateral issues, stated:

"We are going to secure that and supply it to Your Honor, but I am saying to Your Honor now, the witness is here, the records are here, how can the Court then at this time take the position and say to defendants, well, even though he is here and the records are here to show the government witness committed perjury, I am not going to permit it because the government says it is a collateral matter."

Continuing in the same line of argument at pp. 4941, 4942, and 4943, Mr. Schiffer stated:

"Now, I say insofar as this testimony, Your Honor, Your Honor has now effectively closed the door to the defendant Parks who finds himself here unwillingly joined in an indictment with all of these ·other parties. You have now said to Mr. Parks, 'Sit and keep your mouth closed. Keep your lawyer's mouth closed, too. Because even though there is a man who is alleged to have committed perjury for the prosecution I am going to let it in, you can't attack it.' That is what I have been told just now in every real sense."

"How do we defend a case here? I say that in itself is an attribute of an ·unfair trial. How do you want me to defend a man, Your Honor? He doesn't need a lawyer here, he needs a pallbearer."

(c) On Thursday, February 20, 1964, as set forth in Volume 25, p. 6508 of the transcript, in response to the Court advising the defendants that the government had filed with the Court two IBM tapes that purported to be recordings of telephone conversations, Mr. Schiffer in argument stated:

"Now then how can the Court, I beg of Your Honor, how can the Court be used as an adjunct to the prosecutor to hide evidence and nowhere in the record disclose that these are recordings?"

In the course of the same argument at p. 6510, Mr. Schiffer stated:

"That is how they avoided obeying the law. I say that so far as the defendant Parks is concerned I move for a withdrawal of a juror at this time and I move for a mistrial and a severance because Parks can no longer be, even on any plane, be argued that he was given a fair trial even by the prosecution and relying upon United States v. Berger I say to Your Honor, I say this with complete felicity to you and with my own integrity, and I don't put my own integrity second to anybody alive, and I say to Your Honor that at the very minimum Mr. Parks is entitled to that relief. This is chicanery, not law."

(d) On Thursday, February 27, 1964, as set forth in Volume 30, p. 7831 of the transcript, Mr. Schiffer stated in argument:

"Your Honor permitted a wilful perjurer, and I say now Your Honor had the proof weeks ago that he was perjuring himself on material issues, you knew he was put in by the government, we were not told about that. We were left to find it by chance, but the truth will always out."

III. Mr. Schiffer engaged in repeated abuse and maligning of the Court throughout the trial to such an extent as to indicate a deliberate and studied attack on the administration of justice, a wilful attempt to cause delay and confusion, and an intention to seek by abuse to improperly pressure the Court in making of rulings upon objections and motions.

(a) On Monday, January 27, 1964, as set forth in Volume 7, p. 373 [*sic.*, 1373] of the transcript, in response to the Court stating the rule with regard to peremptory challenges of alternate jurors, all as specifically set forth in Rule 24(c), Federal Rules of Criminal Procedure, Mr. Schiffer in argument stated:

"Now we have systematically throughout this entire trial to this

moment, if it may be called a trial technically begun, we have been systematically excluded, not merely from what I think are basic rights in this case and as the Sureme Court has enumerated them, but I firmly believe now, and I am convinced, and I say this with full integrity as an officer of the court, that in no event can Mr. Parks now succeed in obtaining a fair trial in this court."

(b) On Friday, February 7, 1964, as set forth in Volume 16, pp. 3789 and 3790, after the Court requested Mr. Schiffer to state his objection but reserve argument in the presence of the jury, Mr. Schiffer stated in the presence of the jury:

"My motion is, may Your Honor respectfully allow me to withdraw from the case so I can put this defendant of mine under the protection of the Court and let Your Honor defend him because I am being prevented from defending him, but this is why, every time I rise for an objection Your Honor takes it out on me in front of the jury and I think Mr. Parks is being deprived of * * * [The Court interposing:]

"Mr. Schiffer, I believe the record will reflect that you have had more opportunity to speak than any counsel in this record and the Court has just requested that you state your objections and not be making repetitious argument on the same objection."

Mr. Schiffer: "I am not making repetitious argument. The fact that your Honor has stated that again prejudices Mr. Parks before this jury. I must make these objections and I find that now he doesn't need a lawyer any more in this case, Your Honor, because the way this case is going with this witness, he has been permitted time and again to make statements which are not responsive. He defies the order of the Court but the Court idly does nothing with this witness and this is prejudicing my man. Let me withdraw from the case and I will put my defendant under

the agency and protection of the Court and let the Court ask the questions for him."

(c) On Monday, February 10, 1964, as set forth in Volume 17, p. 4148 of the transcript, Mr. Schiffer stated in argument:

"However, it is mighty significant, Your Honor, that just as soon as we start getting close to what are our defenses, as I have related to the Court three weeks ago in open court and so it is on the record, as soon as we start drawing the illegality to the pants of Mr. Neal he just becomes frightened and runs to the aid of an affiliate, the Court, and wants to drape himself in some kind of chastity which he never had to begin with."

(d) On Wednesday, February 19, 1964, as set forth in Volume 24, p. 6290 of the transcript, in the presence of a defense witness then being cross-examined by the prosecution, Mr. Schiffer stated:

"I just want to caution him, Your Honor, through the Court, I just want to caution this witness not to say that he ever met Mr. Hoffa more than four times. Otherwise he will be indicted as a conspirator by Mr. Neal."

(e) On Tuesday, February 25, 1964, as set forth in Volume 28, p. 7470 of the transcript, Mr. Schiffer stated in argument:

"It's about time we had a jury trial here, not the kind of trial Mr. Neal wants * * *."

(f) On Thursday, February 27, 1964, as set forth in Volume 30, p. 7835 of the transcript, Mr. Schiffer, in arguing with regard to the Court's action in sustaining an objection to the testimony of a witness relating to matters that were wholly and completely collateral to any issue in the lawsuit, stated:

"Well, Your Honor, may I say this, if in this United States of America we have sunk to the low point in a United States court where a witness for the prosecution commits trea-

son, with the knowledge of the prosecutor, and we are to be prohibited on the defense from exposing that kind of dirty, vicious deal, justice is finished in America."

IV. Mr. Schiffer deliberately, knowingly, and intentionally sought to use this Court in such manner as to attempt to evade the provisions of 47 U.S.C. 605, relating to the unlawful interception and publication of radio communications, in this instance radio communications of the Federal Bureau of Investigation intercepted by the witness Bernard Spindel, who was employed for the purpose of making the interceptions by Mr. Schiffer. Mr. Schiffer sought to use the Court to obtain the release and publication of the said interceptions, while believing that any release or publication of the intercepted radio publications by himself would be unlawful. As set forth in the transcript, Volume 18, pp. 4461–4474, and Volume 19, pp. 4615–4619, Mr. Schiffer delivered unto the Court during a noon recess on February 10, 1964, a sealed envelope as an exhibit to a motion filed upon that date, without in any way advising the Court that such exhibit had not been made available to all counsel nor as to the reason for its being sealed, nor as to its contents, whereupon the Court acting in good faith and without suspecting any purpose other than to make available a proper and lawful exhibit to a motion, opened the envelope and filed the contents as a part of the record. Thereafter upon March 5, 1964, Mr. Schiffer sought to again tender to the Court in chambers a sealed exhibit identified as a further production of radio interceptions by the witness Bernard Spindel, but the Court, by reason of its former experience, refused the same and required that it be filed with the clerk and tendered in open court if tendered at all. In connection with the tender of this document it became abundantly clear that Mr. Schiffer was seeking to use the Court to attempt to evade the provisions of 47 U.S.C. 605 and to attempt to use the Court to commit an act of publishing said documents which if performed by himself he be-

lieved would be unlawful. The full account of the conduct and actions of Mr. Schiffer in this regard is set forth in the record at Volume 35, pp. 9085–9107.

V. Accordingly, the Court does hereby adjudge Jacques M. Schiffer in wilful and criminal contempt of this Court under Rule 42(a), Federal Rules of Criminal Procedure, 18 U.S.C.