436 F.Supp. 493 (1977)
In re Contempt Proceedings of Kathryn L. CARR.
UNITED STATES of America, Plaintiff,
v.
Donald Gilbert SMITH, Defendant.
No. CR77-18.
United States District Court, N. D. Ohio, E. D.
April 5, 1977.
Steven R. Olah, Michael B. Michelson, U. S. Dept. of Justice, Organized Crime and Racketeering Section, Cleveland, Ohio, for the United States of America.
Gerald S. Gold, Gold, Rotatori, Messerman & Schwartz, Cleveland, Ohio, for Donald Gilbert Smith.
Jeffrey W. Largent, Cleveland, Ohio, for Kathryn L. Carr.

MEMORANDUM AND ORDER
KRUPANSKY, District Judge.
The instant proceeding arose in the context of a criminal trial commenced before *494 this Court on March 22, 1977. In that action, number CR77-18, the Government charged defendant Donald Gilbert Smith, by indictment, with violations of the federal narcotics laws, 21 U.S.C. §§ 841(a)(1) and 846. Kathryn Louise Carr, the defendant herein, was named in the Indictment as an unindicted co-conspirator and was subpoenaed by the Government to testify herein.
On the afternoon of March 25, 1977, on the fourth day of trial and in the midst of the Government's presentation of its evidence, the Court was advised that Kathryn Carr had allegedly threatened and intimidated another witness and his wife. The Court forthwith convened a preliminary hearing at 4:00 p. m. on March 25, 1977 for the purpose of determining the circumstances of those alleged threats, at which time testimony was offered by the threatened witness, Charles Carr, and by two Special Agents of the Federal Drug Enforcement Administration, Frank Magoch and Karla Hari. The Court found, at the conclusion of the testimony, sufficient probable cause to warrant prosecution for contempt of Court, and, to preserve the authority of the Court and the integrity of the primary proceedings, defendant Carr was taken into custody.
At that time, pursuant to Rule 42(b), Fed.R.Crim.P., Kathryn L. Carr was given oral notice in open court that she was charged upon probable cause for an alleged obstruction of justice in contempt of this Court, in violation of 18 U.S.C. § 401(1). The Court thereupon instructed defendant Carr of her right to counsel, and that in the event she could not retain counsel of her own choice, the Court would appoint an attorney to represent her at the expense of the Government. Defendant Carr responded that she would not accept appointed counsel, and that she was currently represented by an attorney, James L. Burdon of Akron, Ohio, who had represented Kathryn Carr earlier in the principal proceeding.
Defendant was thereafter permitted an unlimited number of telephone calls in order to contact her attorney. However, at approximately 5:15 p. m., on March 25, Kathryn Carr advised the Court that Burdon would be unable to attend the hearing then in progress or subsequent proceedings the following day. Therefore, with defendant's consent, the Court forthwith appointed Jeffrey W. Largent, a respected attorney with considerable federal court experience, to represent Kathryn Carr at the contempt hearing.
Largent arrived at the courthouse at approximately 5:45 p. m., and was advised by the Court that the contempt hearing would be scheduled at defendant's convenience to ensure her adequate time for preparation. Subsequent to conferring with his client, counsel advised the Court that Kathryn Carr desired to proceed to an expeditious hearing on the following morning. The hearing was thereupon scheduled to commence on Saturday, March 26, 1977, at 11:00 a. m., and the proceedings of March 25, 1977 were adjourned at 7:00 p. m.
At the hearing on Saturday, March 26, defense counsel announced that he was prepared to proceed, having had adequate time to prepare the defense and discuss the matter with his client and witnesses. Defendant's motion for trial by jury was denied. Because the incidents occurred four days into a major narcotics trial and due to the exigencies of the circumstances, the Court elected to treat the offense of which defendant stood charged as a petty criminal offense, punishable by imprisonment not in excess of six months. Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969); Bloom v. State of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); United States v. Barnett, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964); In Re Van Meter, 413 F.2d 536 (8th Cir. 1969); United States v. Maragas, 390 F.2d 88 (6th Cir. 1968); United States v. Schiffer, 351 F.2d 91 (6th Cir. 1965), cert. denied, 384 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966).
The evidence educed at the hearing disclosed that on March 25, 1977, during the course of the trial of the principal case, *495 defendant Kathryn L. Carr, a witness in the trial, threatened and intimidated another witness and his wife, i. e. defendant's former husband, Charles Carr, and his present wife, Helen. Charles Carr testified that on at least six occasions while he and his wife were waiting in the witness room in the corridor adjoining the courtroom, defendant Carr stood in the doorway of the witness room and gesticulated by raising her right hand and pointing it at Charles and Helen Carr as if she were firing a pistol at them. At the same time, she silently mouthed the words "You're going to get it." On another occasion in the corridor, defendant Carr gesticulated in a similar fashion with both hands raised and pointed at Charles Carr. This testimony of Charles Carr was corroborated by Helen Carr and by Special Agent Frank Magoch who, as a witness in the principal case, had occasion to be in the corridor as well as the witness room and observed these incidents.
Charles Carr further testified that on one occasion when he was escorting his wife down the corridor to the witness room, defendant Carr, who was standing in the corridor, threatened Charles and Helen Carr by asserting that both would be found under a train. Helen Carr's testimony corroborated her husband's testimony.
Finally, Helen Carr testified that on one occasion, defendant Carr stood next to her in the ladies' restroom and while glaring at her stated, "It's not going to work." Upon exiting the restroom, Helen Carr was again verbally accosted by defendant Carr who stated, "She'd better be afraid." Helen Carr's testimony was corroborated by Special Agent Karla Hari who accompanied Helen Carr to the restroom. While Charles Carr asserted that the foregoing incidents did not place him in fear for his life, Helen Carr did register such fear to her husband and reiterated that fear on the witness stand.
Defendant Kathryn L. Carr asserts, on the other hand, that she never gesticulated towards Charles and Helen Carr; that the comment regarding their deaths under a train was in fact the punchline to an ethnic joke; and that her restroom ejaculation was directed towards a soap dispenser that was in disrepair.
The Court has heard the testimony and the arguments of counsel and in its deliberations is confronted, in the first instance, by an issue of credibility, namely, to believe or disbelieve the testimony of the government witnesses or to accept the testimony of Kathryn Carr or her witnesses. In testing the credibility of the witnesses, the Court is required to consider the behavior of the witnesses upon the witness stand; their manner of testifying; the reasonableness and probability of their testimony; the opportunity they had to see, hear, and know the things about which they testified; the accuracy of their memory; their candor or lack of candor; their intelligence, interest and bias, if any; the relationship that each witness bears to either side of the case in chief; the extent to which, if at all, each witness is supported or contradicted by other evidence and all other tests of truthfulness which a Court is accustomed to apply in its daily administration to weigh and determine the value of each witness.
Inconsistencies or discrepancies in the testimony of a witness, especially when given under oath, and obvious disparities in testimony, impose upon the court the burden of considering whether they pertain to matters of importance or unimportant details, and whether they result from innocent error or calculated falsehood.
The Court is also aware of the obvious disparity in testimony given in the principal case herein by defendant Kathryn Carr while under oath and the sworn testimony given by her before a grand jury in August of 1974. Similarly, the Court is aware of the inconsistency of the testimony of Karl Lange, given under oath in this case, and certain written statements given by him in 1974. Applying the afore-cited standards and criteria, in light of the foregoing observations, the Court assigns greater credibility to the testimony of the government witnesses in this proceeding.
*496 Section 401(1) of Title 18, United States Code, empowers a court of the United States
to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as 
(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
The Supreme Court of the United States, exploring the meaning of the words "so near thereto," stated in Nye v. United States, 313 U.S. 33, 48-49, 61 S.Ct. 810, 816, 85 L.Ed. 1172 (1941):
The phrase "so near thereto as to obstruct the administration of justice" likewise connotes that the misbehavior must be in the vicinity of the court. Nelles & King, Contempt by Publication in the United States, 28 Col.L.Rev. 525, 530. It is not sufficient that the misbehavior charged has some direct relation to the work of the court. "Near" in this context, juxtaposed to "presence", suggests physical proximity not relevancy. In fact, if the words "so near thereto" are not read in the geographical sense, they come close, as the government admits, to being surplusage. There may, of course, be many types of "misbehavior" which will "obstruct the administration of justice" but which may not be "in" or "near" to the "presence" of the court. Broad categories of such acts, however, were expressly recognized in § 2 of the Act of March 2, 1831 and subsequently in § 135 of the Criminal Code. It has been held that an act of misbehavior though covered by the latter provisions may also be a contempt if committed in the "presence" of the Court. Ex parte Savin, Petitioner, [131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150] supra. And see Sinclair v. United States, 279 U.S. 749, 49 S.Ct. 471, 73 L.Ed. 938, 63 A.L.R. 1258.
The conduct here in question occurred in the corridor adjoining the courtroom, the witness room directly across from the courtroom in that same adjoining corridor, and the ladies restroom further down the corridor. In conformity with the decision in Nye v. United States, supra, the Court determines that the alleged contumacious conduct occurred in close physical proximity to the trial of the principal case, and was "so near thereto as to obstruct the administration of justice."
Pursuing the definition of "obstruction of justice," the Court takes cognizance of concomitant statutory provisions defining the law of contempt, particularly 18 U.S.C. § 1503, which states, in pertinent part:
Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States . . . or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
In developing the historical distinction between the law of contempt as found in 18 U.S.C. § 1503 and that found in 18 U.S.C. § 401, the Sixth Circuit Court of Appeals stated in United States v. Essex, 407 F.2d 214, 216-217 (6th Cir. 1969):
Section 1503 of Title 18, "influencing or injuring officer, juror or witness generally", originated with the Act of March 2, 1831, 4 Stat. 487. The 1831 Act was intended to be "declaratory of the law concerning contempts of court." The power of the United States courts to punish for contempt "in any cause or hearing before the same" had been recognized earlier by the Judiciary Act of 1789, 1 Stat. 83. In Section 1 of the Act of March 2, 1831, Congress restricted contempt jurisdiction and its summary proceedings to misbehavior occurring only in the presence of courts "or so near thereto, as to obstruct the administration of justice," see Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941). With Section 2 of the 1831 Act, the predecessor of the statute before us, Congress provided that contempts occurring beyond the presence of courts should be *497 punishable by indictment and trial, and with all the safeguards thereof. The end result was this: Section 1 provided that if conduct amounting to contempt of court occurred in the presence of the court, the contemnor could still be punished summarily. And Section 2 provided that if contemptuous conduct, "influencing or injuring officer[s], juror[s], or witness[es]" in particular, occurred away from the court the offender was to be dealt with by indictment. Savin, Petitioner, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150 (1889). The principal distinction then, between Section 1 and Section 2 of the Act of March 2, 1831, aside from the added procedural safeguards under the latter, was geographical; they both proscribed contemptuous conduct, i. e., obstruction of court proceedings, United States v. Seeley, 27 Fed.Cas. p. 1010, No. 16,248a, (C.C. N.Y.1844). Sections 1 and 2 of the Act of March 2, 1831 are now part of our present statutory scheme as 18 U.S.C. § 401, which condemns obstructive acts in the court's presence and 18 U.S.C. § 1503, which prohibits contemptuous conduct away from court, respectively. (footnotes omitted).
Defendant points to Charles Carr's admission that he was not in fear for his life as a result of defendant Carr's conduct and asserts that absent actual intimidation there can be no obstruction of justice. However, § 1503 defining obstruction of justice refers to the "endeavors to influence, intimidate, or impede any witness," and does not require that any such "endeavor" prove successful. As stated by the Court of Appeals for the District of Columbia in United States v. Jackson, 168 U.S. App.D.C. 198, 513 F.2d 456, 460 (1975):
The word "endeavor," the Supreme Court has said, "describes any effort or assay to accomplish the evil purpose that the section was enacted to prevent." And it is the endeavor to bring about the forbidden result, and not success in achieving the result, that Section 1503 makes a crime. Here the threats Jackson uttered had a reasonable tendency to intimidate, whether they actually did so or not. (footnotes omitted).
See, United States v. Russell, 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553 (1921).
This principle is confirmed in the following words of the Ninth Circuit Court of Appeals in Roberts v. United States, 239 F.2d 467, 470 (9th Cir. 1956):
Any corrupt endeavor to influence any party or witness, whether successful or not, constitutes obstruction of justice prohibited by said section. See Catrino v. United States, 9 Cir., 1949, 176 F.2d 884. The obstruction of justice statute is broad enough to cover the attempted corruption of a prospective witness in a civil action in a Federal District Court.
The Seventh Circuit Court of Appeals reached a similar conclusion in United States v. De Stefano, 476 F.2d 324, 330 (7th Cir. 1973), wherein it acknowledged:
[I]t is not necessary to prove that a witness was actually intimidated by the threats, but only that the threats had a reasonable tendency to intimidate. United States v. Carzoli, 447 F.2d 774 (7th Cir. 1971), cert. denied, 404 U.S. 1015, 92 S.Ct. 673, 30 L.Ed.2d 662 (1972). See also Knight v. United States, 310 F.2d 305, 307 (5th Cir. 1962). (footnote omitted).
Clearly, the threats and gestures employed by defendant Kathryn L. Carr had a reasonable tendency to intimidate, even if Charles Carr was not placed in fear for his life. In any event, the actual intimidation and fear of Helen Carr could have been of sufficient magnitude to achieve defendant's purpose, i. e. to cause Charles Carr to refuse to testify at trial or testify falsely, out of deference to his wife's own fear or his own fear for her safety.
The last element necessary to support a conviction under Section 401(1) of Title 18 is a specific intent to impede the administration of justice. Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 (1893); United States v. Ryan, 455 F.2d 728 (9th Cir. 1972).
Taken within the circumstances and context of the principal narcotics case in progress, and considering the importance of *498 the testimony of the witness, the gesture of the fingers in the configuration of a gun, in conjunction with her utterances, reflects the necessary specific intent to silence the witness or discourage his testimony.
Accordingly, upon review of the evidence in its entirety, the Court concludes that the government has proved beyond a reasonable doubt that Kathryn L. Carr did knowingly and intentionally violate Section 401(1) of Title 18, United States Code; that her conduct and misbehavior rose to the level of an obstruction of the administration of justice; and that her acts constitute a contempt of this Court.
Considering that the acts were perpetrated during the fourth day of trial of a narcotics case of considerable magnitude; considering further that violence and death and threats thereof are common incidents of this insidious business and are the means of silencing material witnesses; considering further that Charles Carr is an important and material witness in these proceedings, whose appearance was subpoenaed by the government; the deliberate acts directed to Charles Carr and his wife, and the threats implicit thereto, constitute an obstruction of this Court's proceedings and an obstruction of judicial process, punishable in this proceeding by incarceration for a maximum period of six months.
The Court must insure the integrity of the judicial process and cannot permit such conduct to pass unnoticed. Although the maximum penalty that may be imposed without a jury is incarceration for a period of six months, the Court shall suspend all but 60 days of that period of incarceration.
Accordingly, defendant Kathryn L. Carr is hereby sentenced to incarceration for a period of six months, however, all but 60 days of that sentence are hereby suspended. Defendant is remanded into the custody of the United States Marshal for the Northern District of Ohio to serve out the term of her sentence.
IT IS SO ORDERED.