983 F.2d 1058
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Relious Essix GLASCO, Defendant-Appellant.
 No. 92-5183.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 30, 1992
Decided: December 30, 1992
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Beckley. Elizabeth V. Hallanan, District Judge. (CR-89-22)
 Argued: Leonard A. Kaplan, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant.
 John Castle Parr, Office of the United States Attorney, Charleston, West Virginia, for Appellee.
 On Brief: Hunt L. Charach, Federal Public Defender, Charleston, West Virginia, for Appellant.
 Michael W. Carey, United States Attorney, Michael L. Keller, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 S.D.W.Va.
 VACATED AND REMANDED WITH INSTRUCTIONS.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Relious Essix Glasco appeals an order of the district court revoking his supervised release and sentencing him to 16 months in prison and 36 months of additional supervised release. We vacate and remand.
 
 I.
 
 2
 In 1989, Glasco was convicted of distribution of crack cocaine. On August 3 of that year, he was sentenced to 25 months in prison, to be followed by four years of supervised release. This court affirmed his conviction in a published opinion. United States v. Glasco, 917 F.2d 797 (4th Cir. 1990), cert. denied, 111 S.Ct. 1120 (1991).
 
 
 3
 On Friday, May 17, 1991, Glasco was freed from prison, and his term of supervised release began. The following Monday, May 20, Glasco went to see his probation officer, who explained his terms of release. Analysis of a urine specimen obtained that day revealed that Glasco had used cocaine over the weekend.
 
 
 4
 The probation officer informed the district court of the positive test result in a memorandum dated July 2, 1991. Because Glasco had passed a drug screen on June 3, had secured a job, and had made the first payment toward satisfying his fine, the probation officer recommended a program of counseling and frequent drug screens to try to break Glasco of his cocaine use. The district court approved these recommendations.
 
 
 5
 Glasco could not stay off cocaine, though. After four consecutive positive tests, the probation officer ordered Glasco to report for a 28day inpatient drug treatment at Jackson Treatment Center in Ripley, West Virginia. Before this treatment could begin, Glasco tested positive twice more.
 
 
 6
 On his release from the Jackson Center, the probation officer instructed Glasco to attend Narcotics Anonymous meetings and to provide written confirmation of his attendance. Glasco failed to comply with these instructions. However, the treatment at Jackson must have helped a little, inasmuch as Glasco managed to abstain from cocaine use during the autumn of 1991. On December 20, 1991, however, he again tested positive.
 
 
 7
 On February 14, 1992, the probation officer recommended that a petition on probation and supervised release be filed and a show cause hearing scheduled. The district court so ordered. On the day of the probation officer's recommendation, Glasco again tested positive for cocaine.
 
 
 8
 At the March 4, 1992, hearing, the probation officer testified about the series of positive drug tests. Glasco did not question the clinical accuracy of the drug tests, but instead argued that his pre-treatment positive tests should not be given as much weight as his relatively clean slate (excepting, of course, the December 20 and February 14 tests) after his stay at the Jackson Center.
 
 
 9
 The district court found that Glasco had repeatedly violated the terms of his supervised release. Citing 18 U.S.C.s 3583(g), the court revoked the supervised release and sentenced Glasco to 16 months incarceration. A new term of three years of supervised release was to follow this imprisonment.
 
 
 10
 Glasco appeals.
 
 II.
 
 11
 In United States v. Parriett, 974 F.2d 523 (4th Cir. 1992), we held that application of 18 U.S.C. § 3583(g)-which mandates revocation of release upon a finding that the defendant possessed a controlled substance-to persons whose offense conduct was completed before the date of enactment of that subsection violates the Constitution's prohibition of ex post facto laws.* Glasco's offense was committed before § 3583(g)'s effective date (December 31, 1988); application of that provision in revoking Glasco's release is thus a constitutional error.
 
 
 12
 Though Glasco did not raise an ex post facto challenge to § 3583(g) in the district court or in his brief on appeal, thus raising potential issues of waiver and plain error, the United States has, in the interest of justice, joined in Glasco's request that we apply Parriett here to vacate the judgment and remand for reconsideration without application of § 3583(g). We will honor this request. Thus, as in Parriett, this case is "remanded to the district court to allow the court to determine the consequences of [Glasco]'s supervised release violations with the understanding that section 3583(g) is inapplicable to him."
 
 III.
 
 13
 In United States v. Cooper, 962 F.2d 339 (4th Cir. 1992), we held that 18 U.S.C. § 3583(e) does not permit a district court to revoke supervised release, order incarceration, and impose another period of supervised release. The parties agree that the district court's imposition of a new term of supervised release violated Cooper. Though vacating the revocation order moots any questions of sentencing, we would expect Cooper to be applied on remand should the district court again order revocation of Glasco's supervised release.
 
 IV.
 
 14
 Glasco also argues that Judge Hallanan should have recused herself because she took part in the charging decision. Glasco raises this argument for the first time on appeal.
 
 
 15
 The revocation of Glasco's supervised release began with a petition on probation and supervised release. This petition consists of the representations of the probation officer to the court, with a prayer that the court issue a summons for a show cause hearing. The district court entered an order granting this petition.
 
 
 16
 This procedure is akin to a contempt proceeding-a possible violation of one of the court's orders is brought to the court's attention, and the court summons the possible violator to show cause why he should not bear the consequences. The court certainly has a role in instituting the show cause proceeding, but this role is judicial, not prosecutorial, and it does not suggest a lack of impartiality. From time immemorial, courts have been involved in instituting" charges" of criminal contempt, but, absent contumacious conduct personally directed at the judge, no question of recusal ordinarily arises. See, e.g., Fed. R. Cr. P. 42(b) (judge disqualified from hearing criminal contempt "[i]f the contempt charged involves disrespect to or criticism of" the judge); Nilva v. United States, 352 U.S. 385, 396 (1957) (recusal of judge "discretionary").
 
 
 17
 On this record, no circumstances appear from which Judge Hallanan's impartiality can be questioned. Glasco's drug-use relapses certainly do not constitute personal disrespect or criticism of the judge. Issuing the rule to show cause is not in and of itself sufficient to warrant disqualification.
 
 
 18
 The judgment of the district court is vacated, and the case is remanded for reconsideration in light of Pariett and Cooper.
 
 VACATED AND REMANDED WITH INSTRUCTIONS
 
 
 *
 U.S. Const., art. I, § 9, cl. 3