**In re William K. GROGAN.**

**Crim. No. 3:96CR30–A.**

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 24, 1997.

Gerald T. Zerkin, Richmond, VA, for Grogan.

James Comey, Assistant U.S. Attorney, U.S. Attorney's Office, Richmond, VA, for U.S.

## MEMORANDUM OPINION

PAYNE, District Judge.

Upon application of the United States pursuant to Fed.R.Crim.P. 42(b), the Court, on November 5, 1996, ordered William K. Grogan to show cause why he should not be found guilty of criminal contempt under Title 18, United States Code, Section 401(1), and punished for that contempt by fine or imprisonment. The Order to Show Cause ("Show Cause Order II") charged Grogan with two

separate counts of criminal contempt.[1] For good cause shown, and upon agreement of the parties, Count One of Show Cause Order II was dismissed by Order dated January 16, 1997. The defendant urged dismissal of Count Two as well, but the Government, while candidly identifying what it thought to be difficulties in its proof, declined to join that request. The Court refused to dismiss Count Two, finding that there was sufficient evidence to support a conviction under 18 U.S.C. § 401(1).

The next day, January 17, 1997, the Government filed a Motion to Dismiss Order to Show Cause requesting dismissal of Count Two, for the reason that the Government considered the proof to be inadequate to support one element of that count. For the reasons set forth below, Count Two will not be dismissed, and the Government's motion is denied.

## BACKGROUND

The allegedly contemptuous behavior which is the subject of Count Two of Show Cause Order II has its genesis in a criminal case brought by the United States against Alice Dean Van Dagenhardt. *See United States v. Dagenhardt,* Crim. No. 3:95cr88. An understanding of those proceedings is therefore important to resolution of the Government's motion.

On September 12, 1995, Dagenhardt was indicted for bank fraud (Count 1), use of an unauthorized access device (Counts 2 and 3) and use of a false Social Security number (Count 4). On March 12, 1996, Dagenhardt entered a plea of guilty to Count Three, one of the charges alleging use of an unauthorized access device. Sentencing was set for June 13, 1996.

On June 7, 1996, Grogan filed a Petition for Upward Departure From Sentencing Guidelines (the "Petition") purportedly on behalf of forty-one people who allegedly had been defrauded by Dagenhardt in transactions unrelated to those in the indictment. In filing that document, Grogan purported to act "as an officer of the court and as a citizen of the United States," whose "obligation" it was "to bring the following matters before the Court because I believe this information will persuade the Court that it should depart upward from the Defendant's Criminal History Category ... [because] [t]he Defendant's history of unpunished criminal activity is far greater than that of the typical criminal defendant with only two convictions." Petition at 1–2. In essence, the Petition filed by Grogan, which with its appendices exceeded 100 pages, charged that Dagenhardt, in various ways, had eluded just punishment for past fraudulent conduct and that this Court should remedy that circumstance by imposing a more severe sentence than was prescribed by the Sentencing Guidelines.[2]

On June 10, 1996, Dagenhardt's counsel objected to the filing of the Petition and requested additional time to respond to the charges made by Grogan. By Order entered on June 13, 1996, the Court ruled that the Petition would be considered and continued the sentencing to August 5, 1996 to afford Dagenhardt time to respond. Also, because the Petition contained numerous allegations which facially were unrelated to the charges in the indictment, Grogan was ordered to file a supplemental pleading relating each alleged act of criminal conduct in the Petition as relevant conduct to the offense of conviction (use of an unauthorized access device).

On June 24, 1996, Grogan filed the Supplemental Petition for Upward Departure from Sentencing Guidelines (which, with attachments, exceeded 100 pages). In that pleading, Grogan alleged that Dagenhardt had engaged in fraudulent activities for at least fourteen years, but had escaped just punishment and avoided civil liability to those she had harmed, many of whom were Grogan's clients.

1. This case involves two show cause orders, one issued on August 6, 1996 ("Show Cause Order I") and another issued on November 5, 1996 which is hereinafter referred to as "Show Cause Order II."

2. Interestingly, Grogan reported that he had represented, or was still representing, in civil actions against Dagenhardt many, if not all, of the 41 persons on whose behalf he filed the Petition for Upward Departure.

On July 22, 1996, Dagenhardt responded to the Supplemental Petition. Her response outlined in detail Grogan's extensive efforts to involve himself in the underlying criminal charges reflected in the indictment, principally by insinuating himself into the Secret Service investigations which led to Dagenhardt's indictment in this case. Dagenhardt's response also highlighted the irrelevancy and error which pervaded the Petition and the Supplemental Petition. The Government filed its response to the Supplemental Petition wherein it largely agreed that the matters asserted by Grogan were either irrelevant or erroneous, or both.

On July 31, 1996, Grogan filed an unsolicited pleading purporting to clarify his view of matters. *See* Proffer Clarifying Facts In Dispute In Response of the United States. Like many of Grogan's other pleadings it was disjointed and inaccurate and, in Grogan's words, it took a "sarcastic and confrontational approach." *See Id.* at 26. And, like the other pleadings filed by Grogan, it reflected a personal vendetta against Dagenhardt more than an effort to bring relevant material to the attention of the Court.

The sentencing occurred on August 5, 1996. Of all the information submitted by Grogan, the Court considered only one factual assertion, involving an alleged credit card fraud on CitiCorp, as relevant conduct to the offense of conviction.

It is necessary now to return to June 7, 1996, when Grogan filed the original Petition. Therein, Grogan represented that he was authorized to file that Petition on behalf of 41 alleged victims of Dagenhardt's fraudulent financial activities. Attached to the Petition as Exhibit One was a list of 41 names, captioned "Victims of Alice Dagenhardt." The list included Annabelle Wrayton, John O'Toole, O'Toole's Restaurant (owned and operated by John O'Toole), and Leonardo's Pizza.

On July 22, 1996, Dagenhardt filed her response to the Petition and other sentencing issues. Attached thereto were the sworn affidavits of John O'Toole and Annabelle Wrayton, each of whom stated under oath that they had not authorized Grogan to file the Petition. Mrs. Wrayton also stated that she had not been a victim of fraud by Dagenhardt. At the sentencing hearing on August 5, Dagenhardt presented the additional affidavit of George Tame, the owner of Leonardo's Pizza, who stated that he had not authorized Grogan to represent either himself or Leonardo's Pizza in filing the Petition, and, in fact, that he had previously informed Grogan that he (Tame) did not wish to speak to Grogan about Dagenhardt and did not wish to take any action against her.

In response to both the evidence submitted by Dagenhardt, which seriously called into question some of the representations made by Grogan in the Petition, and the Court's expression of concern over Grogan's alleged misconduct, Grogan, who was in attendance at the August 5 sentencing hearing, rose and asked to address the Court. That request was declined and Grogan was informed on the record that an order to show cause for contempt would be issued against him shortly.

By order dated August 6, 1996, the Court issued Show Cause Order I which directed Grogan to "show cause why he should not be sanctioned for representing to this Court that John O'Toole, Annabelle Wrayton, and George Tame, owner of Leonardo's Pizza, authorized him to file on their behalf a Petition for Upward Departure in the matter of the sentencing of Alice Dean Van Dagenhardt." The hearing on Show Cause Order I was set for August 30, 1996.

On August 22, 1996, Grogan filed a Response to Show Cause Order, wherein, Grogan stated:

> Grogan is grateful for the Court's issuance of this SHOW CAUSE ORDER, which gives him the opportunity to put on the record his refutation of the aspersions he feels have been cast on his reputation in Defense Counsel's allegations that Grogan has been untruthful to this Honorable Court. *Fully believing that there is no possession so precious as one's reputation, Grogan, at the Sentencing Hearing cited herein requested of Assistant United States Attorney Evans that he be allowed to speak briefly to the accusations made against him by Defense Counsel, or, fail-*

*ing that, that a SHOW CAUSE ORDER be issued* to which he might respond in order to defend his honor. (See Exhibit A, a copy of a note passed between Grogan and AUSA Evans.)

Brief of William K. Grogan (Petitioner) In Response To Show Cause Order ("Grogan Response Brief") at 2 (emphasis added). Attached to Grogan's response as Exhibit A was a photocopy of a handwritten note purportedly passed by Grogan to the Assistant United States Attorney Joan Evans during the August 5 sentencing hearing. Nearly the entire space on the note is occupied by large handwriting which reads as follows:

Joan—will you agree to allow me to make a *short* statement on the record re: misreps to defend my integrity 30 seconds—please

Grogan Response Brief, Exhibit A (original emphasis) Both the Government and Grogan agree that this statement was written by Grogan and that a note with that statement on it was handed to Evans during the Dagenhardt sentencing hearing. Also appearing on the face of the note, written perpendicular to Grogan's request, is the response, "I'm sorry—NO." *Id.* The parties agree that this was written by AUSA Evans in response to Grogan's request and that Evans then handed the note back to Grogan.

At issue here is the following statement which also appears on the photocopy of the note submitted to the Court as Exhibit A to Grogan's Response to Show Cause Order I:

If not could you ask Ct. to issue Show Cause so I can refute.

*Id.* The parties agree that this statement was written by Grogan. Laboratory analysis has revealed that the statement was written in the same kind of ink as the first sentence on the note. However, this second statement, which makes reference to the issuance of a show cause order, is written in very small, compressed handwriting along the very bottom edge of the note. Upon examination, it appears that, as the Government later argued, the author of this second sentence (Grogan) found it extremely difficult to fit that statement onto the face of the note.[3]

On August 26, 1996, the Government filed a pleading in reply to Grogan's submission of Exhibit A. That pleading, styled "Notice of Intent to Offer 404(b) Evidence" ("Government's Notice"), stated:

[A]t the show cause hearing currently scheduled for August 30, 1996, the government will present evidence, pursuant to F.R.E. 404(b), that Exhibit 'A' of the "Brief of William K. Grogan (Petitioner) in Response to Show Cause Order," consisting of *a photocopy of a note passed by Mr. Grogan to the government during the sentencing hearing of the defendant Alice Dagenhardt, has been altered from the original.* Specifically, the government will present the testimony of Secret Service Agent Laurie Mantz, who saw and read the note at the sentencing hearing, that *the last line appearing on Exhibit 'A' ("If not could you ask Ct to issue show cause so I can refute") did not appear on the original note at the time the original note was presented to the government at the sentencing hearing.*

*Id.* at 1 (emphasis added).

On the next day, August 27, Grogan responded to the Government's Notice by filing a Motion for Continuance, wherein he moved the Court to continue the show cause hearing set for August 30. The motion argued for a continuance on the following basis:

The above Notice by the United States has come as a complete surprise to Grogan. *To disprove the allegations* of the United States, *Grogan must contact and subpoena several* witnesses, and must determine if there is any laboratory test which can be made which will *authenticate the document in question. This cannot be completed by the scheduled date of the Hearing. Because of the new development,* the issues

3. Also attached to Grogan's Response Brief were affidavits from Peter O'Toole and Annabelle Wrayton which stated that although the affiants had not specifically authorized the filing of the Petition, they ratified Mr. Grogan's actions, had discussed Dagenhardt with Grogan, and generally supported his efforts to see that she was brought to justice. As for Leonardo's Pizza, the president of Leonardo's, James Kelley, testified by affidavit that Grogan had his support in filing the Petition.

raised in said Notice concerning the ethics and character of Grogan, *and the complications attendant* thereto, Grogan feels it is in his best interest that he not represent himself, but *retain private counsel.*

*Id.* at 1–2 (emphasis added). Of course, the "new development" to which Grogan referred was his own conduct in submitting the allegedly falsified document in support of his Response to Show Cause Order I, and the Government's challenge thereto. The "complications attendant thereto" no doubt include the fact that Grogan submitted with his Motion for Continuance an affidavit denying filing of a falsified note, thereby exposing him to the risk of criminal charges, if its contents were untrue.[4]

The Government responded to Grogan's motion on August 28, indicating that it was "prepared to go forward with the proceedings scheduled for August 30, 1996, but does not oppose the motion of respondent William K. Grogan, Esq. for a continuance." Response of United States to Motion for Continuance.

In response to Grogan's Motion for Continuance, the Court held a hearing by telephone conference on August 28, 1996. The only matters discussed during that hearing were Grogan's allegedly fraudulent filing of Exhibit A and his resultant Motion for Continuance. The participants in that hearing were the Court, Grogan, Evans, and the court reporter, who transcribed the proceedings. During the hearing, the Court noted that "[t]he charges here involving this note are fairly serious. So I want you to have counsel, and I want your counsel to fully look at all these pleadings and everything." Transcript, August 28, 1996 ("Tr.8/28/96") at 2–3. To afford Grogan time to retain private counsel and time to prepare a defense to the allegations respecting the allegedly altered note submitted in Grogan's Response to Show Cause Order I, the Court granted the Motion for Continuance by order dated August 28, 1996. On August 30, 1996, the Court again conferred with counsel for the United States and counsel for Grogan in a telephone conference in order to set a new date for the delayed show cause hearing. By order dated September 4, 1996, "to afford opportunity for respondent's counsel to have certain evidence assessed by experts," the Court set the show cause hearing on Show Cause Order I for November 5, 1996.

On September 26, 1996, counsel for Grogan filed Respondent's Motion to Determine Criminal Exposure, moving the Court "to determine the extent of [Grogan's] criminal exposure, if any," so that Grogan could exercise his rights under Fed.R.Crim.P. 42 and the Sixth Amendment if the matter were to proceed as a criminal contempt prosecution. The Court denied Grogan's motion by order dated October 9, 1996, "finding no authority for the procedure therein requested or the relief therein sought."

In a letter to the Court (with a copy to Grogan's counsel) dated October 31, 1996, the Assistant United States Attorney correctly noted that "it is not clear whether the Court's order to show cause [Show Cause Order I], which uses only the term 'sanctioned,' is intended to initiate a criminal contempt proceeding or, rather, a disciplinary proceeding under the local rules governing misconduct by counsel." That letter concluded with the following sentence: "If the Court does intend the November 5 hearing to serve as the evidentiary basis for possible criminal sanctions and wishes the United States Attorney to serve as the prosecutor and present affirmative evidence, we would do so, and on short notice."

Upon application of the United States Attorney's Office pursuant to Rule 42(b), the Court, on November 5, 1996, ordered Grogan to show cause (Show Cause Order II) why he should not be found guilty of criminal con-

4. In support of his Motion For Continuance, Grogan submitted a signed affidavit under oath wherein he states that:

> I have not altered any document that has been submitted as evidence in this Case. The copy of the note passed to AUSA Joan Evans on August 5, 1996 is a true and exact copy of the original note passed to her. The original is still in my possession and there have been no additions or any other markings added to it since it was passed to AUSA Evans and returned to me.

Motion For Continuance, Grogan Affidavit at ¶ 2.

tempt under 18 U.S.C. § 401(1).[5] Show Cause Order II contained two separate counts of criminal contempt, as set forth below:

*COUNT ONE*

GROGAN shall show cause why he should not be held in contempt for falsely representing to this Court in his June 7, 1996 "Petition for Upward Departure from Sentencing Guidelines" in *United States v. Dagenhardt,* Crim. No. 3:95CR88, that he was authorized to file that Petition by John O'Toole, Annabelle Wrayton, and George Tame, owner of Leonardo's Pizza.

That, of course, was the same contempt which was the subject of Show Cause Order I. However, Show Cause Order II also contained Count Two which related to the allegedly falsified note. It provided:

*COUNT TWO*

GROGAN shall also show cause why he should not be held in contempt for submitting a forged and fraudulent document to this Court as Exhibit A to his August 20, 1996 "Brief in Response to Show Cause Order." Specifically, GROGAN is alleged to have altered that exhibit, which is a note he had exchanged with government counsel during proceedings in *United States v. Dagenhardt* in order to create the false impression that the following language had been on the note when it was originally shown to government counsel: "If not could you ask c[our]t to issue show cause so I can refute."

By order dated November 7, 1996, the Court set the criminal contempt proceedings for trial by jury on Counts One and Two on January 24, 1997.[6]

At a hearing held on November 5, oral notification was provided to Grogan by the Court, pursuant to Rule 42(b), that criminal contempt proceedings would be initiated and that the United States Attorney's Office would prosecute the matter. Also at the November 5 hearing, Grogan informed the Court of his intent to assert his right to a trial by jury pursuant to Rule 42(b) and the Sixth Amendment. *See Bloom v. State of Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *United States v. Hawkins,* 76 F.3d 545 (4th Cir.1996).

Then, on November 15, 1996, the United States filed a document entitled "Memorandum Concerning Order to Show Cause" ("Government's Show Cause Mem."). That memorandum correctly noted that contempt proceedings are "unusual in that the prosecutor is acting to assist the court in vindicating the *court's* authority." Government's Show Cause Memo. at 1 (original emphasis). Thereafter, the Government recited what it considered to be "potential shortcomings in the prosecution's evidence," *id.,* suggested a deficiency in proof on Count One, and suggested two procedural alternatives to the scheduled criminal contempt jury trial: a bench trial only on Count Two of Show Cause Order II, or a disciplinary proceeding on that issue under the Federal Rules of Disciplinary Enforcement (Appendix B to Local Rules). *Id.* at 10–11. On December 6, 1996, Grogan filed Defendant's Memorandum Concerning Order to Show Cause ("Grogan's Show Cause Mem."), wherein he moved the Court for the dismissal of both counts of Show Cause Order II.

By order dated January 17, 1997, the Court dismissed Count One of Show Cause Order II which involved the alleged misrepresentation of Grogan's authority to file the petition for upward departure on behalf of O'Toole, Wrayton and Tame. Finding, however, that "there is sufficient evidence to sustain a criminal contempt conviction under 18 U.S.C. § 401(1)," the Court declined to dismiss Count Two (the falsified note charge). The Court also declined to limit the potential sentence to a maximum of six months confinement or a $5,000 fine in order

5. *See United States v. United Mine Workers of America,* 330 U.S. 258, 296, 67 S.Ct. 677, 697, 91 L.Ed. 884 (1947) (order to show cause can serve notice function of Rule 42(b)).

6. Fed.R.Crim.P. 42(b) requires that, after notice is provided to a defendant, "a reasonable time for the preparation of the defense" must be afforded.

that a bench trial would be permissible.[7]

By letter dated January 14, 1997, and by oral motion in court on January 16, 1997, Grogan moved the Court to recuse itself from presiding over the criminal contempt proceeding because the defense might present evidence of comments made by the Court during Dagenhardt's sentencing hearing on August 5. Finding this motion to be without merit for the reasons set forth on the record on January 16, 1997, the Court denied Grogan's motion. *See* Rule 42(b); *United States v. Neal,* 101 F.3d 993, 1000 n. 5 (4th Cir. 1996); *Nakell v. Attorney General of North Carolina,* 15 F.3d 319, 325 (4th Cir.1994); *United States v. Glasco,* 983 F.2d 1058, 1992 WL 389289 at *2–*3 (unpublished) (4th Cir. 1992); *United States v. Parker,* 742 F.2d 127, 128 (4th Cir.1984).

That brings us to the Motion to Dismiss Order to Show Cause filed by the Government on January 17, 1996. Therein, the Government requests that the Court dismiss Count Two of Show Cause Order II. The motion is premised on the conclusory statement that the Government "has concluded that it is unable to offer legally sufficient evidence of an 'actual obstruction of justice' resulting from the alleged misbehavior underlying Count Two." Motion to Dismiss (citing *United States v. Warlick,* 742 F.2d 113, 115 (4th Cir.1984)).[8] The Government's motion does not explain why it reached that conclusion nor does the motion reflect any reasoned analysis of the controlling decisional law on that element of the charge.[9]

For the reasons set forth below, the Motion to Dismiss Count Two is denied.

## THE LEGAL STANDARD GOVERNING CRIMINAL CONTEMPT PROCEEDINGS

Title 18, United States Code, Section 401, entitled "Power of Court," provides:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice.

In order for conduct to be punishable under 18 U.S.C. § 401(1), four essential elements must be established beyond a reasonable doubt:

(1) misbehavior of a person;

(2) which is in or near to the presence of the Court;

(3) which obstructs the administration of justice; and

(4) which is committed with the required degree of criminal intent.

*United States v. Warlick,* 742 F.2d 113, 115 (4th Cir.1984). In this case, there is no dispute that, if Grogan submitted a falsified note (Exhibit A to his Response to Show Cause Order I), the evidence would permit a jury to find elements one, two

7. *See Cheff v. Schnackenberg,* 384 U.S. 373, 379–80, 86 S.Ct. 1523, 1525–26, 16 L.Ed.2d 629 (1966) (no right to trial by jury in prosecution for "petty offense"); *Callan v. Wilson,* 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888); *Schick v. United States,* 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99 (1904); *District of Columbia v. Clawans,* 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937). Title 18, United States Code, Section 19 defines a "petty offense" as a crime punishable by maximum confinement of six months or less or a $5,000 fine. *See Id.* (referencing 18 U.S.C. §§ 3559, 3571(b)(6), (b)(7)).

8. As an element of the offense of criminal contempt under 18 U.S.C. § 401(1), the Government must prove that the defendant's misconduct actually "obstruct[ed] the administration of justice." 18 U.S.C. § 401(1); *See Warlick,* 742 F.2d at 115.

9. The absence of such an analysis is particularly disturbing considering the position taken by the Government in its memorandum filed on November 15, 1996. After stating that Count One of Show Cause Order II presented a close case, the Government stated:

> As to the forged note [Count Two], the proof of the "actual obstruction" element seems less troublesome on its face because Grogan's submission of the note precipitated delay of the scheduled sanctions hearing; it appears, however, that the evidence will show there was a delay only because *Grogan* requested it in order to accommodate the entry of his counsel into the case and to enable him to meet the government's allegation of forgery.

Government's Show Cause Mem. at 8 (original emphasis).

and four.[10] Thus, the issue presented by the Government's motion is centered on the third element: whether Grogan's filing of the allegedly altered note "obstruct[ed] the administration of justice." *Id.* It is to that question that we now turn.

Courts are vested with the power to initiate contempt proceedings "to ensure that the judiciary is not utterly dependant upon the other branches of government to vindicate judicial authority." *United States v. Neal,* 101 F.3d 993, 996 (4th Cir.1996) (citing

10. At the November 5 Rule 42(b) notice hearing, the Court *sua sponte* raised the issue of whether the filing of a pleading with the clerk of court may be classified as a form of misbehavior committed "in or near to the presence of the Court," *Warlick,* 742 F.2d at 115, noting that the Seventh Circuit had observed in *Oberhellmann* that "[t]he circuits are split on this (surprisingly) infrequently litigated issue." 946 F.2d at 52. The *Oberhellmann* court recognized, but did not resolve, this issue, commenting that "[P]erhaps the term should be confined to words uttered or gestures made in the courthouse, rather than interpreted to embrace the quiet filing of a piece of paper, albeit or a fraudulent one. *Id.* at 52–53.

A close review of the cases cited by the Seventh Circuit for the proposition that the "circuits are split," however, demonstrates that misbehavior such as that alleged in Count Two of Show Cause Order II falls squarely within the "so near thereto" language of 18 U.S.C. § 401(1). First, there does not appear to be a split in the circuits concerning whether the filing of a document can support the second element of a criminal contempt conviction. The *Oberhellmann* Court cited two early cases for the proposition that misbehavior in the form of filing a fraudulent document could support a contempt finding under 18 U.S.C. § 401(1). *See Laughlin v. United States,* 151 F.2d 281, 285 (D.C.Cir.1945) (*per curiam*) (lawyer properly held in contempt for filing affidavits where filings at issue "took place in the courtroom, or may be, in some instances, in the Clerk's Office, and whether in the one or the other, in every instance, in the actual progress of the trial in which [lawyer] was actively of counsel"); *see also Schmidt v. United States,* 124 F.2d 177 (6th Cir.1941). In focusing on the location of the filing, these courts were properly following the Supreme Court's holding in *Nye v. United States,* 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941), that the statute's requirement of misbehavior "near" the presence of the court meant geographical, and not metaphysical, proximity. *Id.* at 48–49, 61 S.Ct. at 815–16 ("misbehavior must be in the vicinity of the court").

On the other hand, the Seventh Circuit's citation to *United States v. Lee,* 720 F.2d 1049, 1052 (9th Cir.1983), for the proposition that filings cannot support contempt proceedings under § 401(1) appears to be misplaced. In that case, the defendant had been *summarily* punished pursuant to Fed.R.Crim.P. 42(a) for the filing of a bogus substitution of counsel motion. The Ninth Circuit held only that summary punishment under Rule 42(a) was inappropriate because a "written motion" cannot "fall within the statutory definition of contempt as misbehavior *in the court's presence* which obstructs the administration of justice." 720 F.2d at 1052 (original emphasis). The Ninth Circuit did not consider whether the filing of a fraudulent document could support a conviction under § 401(1) pursuant to the non-summary procedure set forth in Rule 42(b) on the ground that the offense occurred "near" the presence of the court.

In short, there appears to be no "split" in the circuits over whether the filing of documents may serve as the basis for a contempt conviction if the filing takes place near the presence of the court. In this case, applying the geographical analysis dictated by *Nye,* it is apparent that the filing at issue qualifies because it took place well within speaking distance of this Court and during the pendency of proceedings. Moreover, there is recent authority supporting the application of § 401(1) to the facts of this case. In *American Airlines, Inc. v. Allied Pilots Ass'n,* 968 F.2d 523, 531 (5th Cir.1992), the court found that "in or near the presence of the court" element satisfied because "the attorneys did more than file the falsely marked declarations. They used this evidence to support their motion for TRO in a hearing before the court." Similarly, Grogan filed Exhibit A to his Response in support of his effort to seek dismissal of Show Cause Order II.

Furthermore, in general, acts taking place in the building of which the courtroom is a part are said to be sufficiently near the presence of court. *See* 1 Sand, *et al.* Modern Federal Jury Instructions (1996) § 20.01, Instruction 20–6 ("Misbehavior in Presence of Court") Comment at 20–15 (citing "close proximity" test of *Nye v. United States,* 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172; *United States v. Huff,* 206 F. 700 (S.D.Ga.1913); *see, e.g., In re Stewart,* 571 F.2d 958 (5th Cir.1978 ( (adjoining corridor or hallway); *In re Carr,* 436 F.Supp. 493 (N.D.Oh.1977) (witness room across hallway from courtroom); *Id.* (restroom down corridor from courtroom); *In re Adams,* 421 F.Supp. 1027 (E.D.Mich.1976) (jury room located one floor below courtroom).

Based on the foregoing analysis, the Court finds that the second element ("in or near the presence of the Court") is satisfied in this case. The Government and Grogan both concur with the Court's holding. *See* Government's Memorandum Concerning Order to Show Cause (Nov. 15, 1996) at 6; Defendant's Memorandum Concerning Order to Show Cause (Dec. 6, 1996) at 6. *See also In re Jafree,* 741 F.2d 133, 136 (7th Cir.1984) (Rule 42(b) proceeding is the exclusive remedy for "indirect contempt" in the form of filing fraudulent pleadings; summary punishment would be inappropriate).

Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 795–96, 107 S.Ct. 2124, 2131–32, 95 L.Ed.2d 740 (1987)). Federal courts have had the power to punish contemptuous behavior since the founding years of the United States. Under the Judiciary Act of 1789, 1 Stat. 83 § 17, the "inferior federal courts [had] broad and undefined power" to punish contemptuous. *In re McConnell*, 370 U.S. 230, 233, 82 S.Ct. 1288, 1290–91, 8 L.Ed.2d 434 (1962). Years later, however, Congress passed the Act of 1831, ch. 99, 4 Stat. 487 (March 2, 1831), "in order to correct serious abuses of the summary contempt power that had grown up," *Id.;* the Act of 1831 "was intended as a drastic delimitation" of the broad powers afforded the courts under the previous Act. *Id.*

The Act of 1831 required that, in order to be contemptuous, the alleged misconduct must "obstruct the administration of justice." [11] As the Supreme Court long ago explained:

> An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted.

*Ex parte Hudgings*, 249 U.S. 378, 383, 39 S.Ct. 337, 339–40, 63 L.Ed. 656 (1919). In *Toledo Newspaper Co. v. United States*, 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186 (1918), the Court endorsed a broad construction of the language of the Act of 1831; it required only that conduct have a "*tendency* to prevent and obstruct the discharge of judicial duty." *Id.* at 419, 38 S.Ct. at 564 (emphasis added); *see also Craig v. Hecht*, 263 U.S. 255, 277, 44 S.Ct. 103, 106, 68 L.Ed. 293 (1923). This view proved aberrational and was overruled in *Nye v. United States*, 313 U.S. 33, 47–52, 61 S.Ct. 810, 815–17, 85 L.Ed. 1172 (1941), which "narrowly limited the conduct proscribed by the 1831 Act to 'misbehavior in the vicinity of the court disrupting *to quiet and order or actually interrupting* the court in its conduct of its business.'" *Bloom v. State of Illinois*, 391 U.S. 194, 206, 88 S.Ct. 1477, 1484–85, 20 L.Ed.2d 522 (1968) (emphasis added) (*quoting Nye v. United States*, 313 U.S. at 52, 61 S.Ct. at 817). The application of *Hudgings* and *Nye* to cases arising under 18 U.S.C. § 401(1) [12] was confirmed by the Supreme Court in *McConnell*, 370 U.S. at 233–34, 82 S.Ct. at 1290–91. In *McConnell*, the Court, relying on *Hudgings* and *Nye*, emphasized that it must "clearly be shown [that] an *actual obstruction of justice*" occurred. 370 U.S. at 234, 82 S.Ct. at 1291 (emphasis added); *see In re Brown*, 454 F.2d 999, 1004 (D.C.Cir.1971). As the Fourth Circuit has explained:

> Obstruction of the administration of justice is not to be confused with obstruction of justice. Justice may be obstructed by mere inaction, but obstruction of the administration of justice requires something more—*some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process.*

*United States v. Warlick*, 742 F.2d at 115–16 (*citing Ex parte Hudgings*, 249 U.S. at 383, 39 S.Ct. at 339–40) (emphasis added).

In line with *McConnell*, modern decisions have held unanimously that a conviction under 18 U.S.C. § 401(1) requires an "actual obstruction" of the administration of justice.[13]

11. The current contempt statute, 18 U.S.C. § 401(1), has retained this precise language.

12. In 1911, Congress passed 28 U.S.C. § 385, which slightly redefined the power of the federal courts to punish contemptuous behavior. The current contempt statute, 18 U.S.C. § 401(1), was passed in 1948 and is based on former 28 U.S.C. § 385.

13. *See, e.g. United States v. Warlick*, 742 F.2d at 115–16; *United States v. Oberhellmann*, 946 F.2d 50, 52–53 (7th Cir.1991); *American Airlines, Inc. v. Allied Pilots Association*, 968 F.2d 523, 532 (5th Cir.1992); *United States v. Time*, 21 F.3d 635, 641 (5th Cir.1994); *United States v. McGainey*, 37 F.3d 682, 684 (D.C.Cir.1994); *Vaughn v. City of Flint*, 752 F.2d 1160, 1168 (6th Cir.1985). There is authority for the proposition that this element is implicated only when the summary contempt power permitted under Rule 42(a) is invoked. *See Taberer v. Armstrong World Industries, Inc.*, 954 F.2d 888 (3rd Cir.1992). That approach is certainly not illogical, but it depends upon the premise that the federal courts have contempt powers beyond those prescribed by 18 U.S.C. § 401. *See Taberer*, 954 F.2d at 899 (limitation of contempt power to that prescribed by

However, few courts have attempted to fashion a precise definition of the "actual obstruction of administration of justice" element of a contempt charge. The most cited authority appears to be *United States v. Oberhellmann,* 946 F.2d 50 (7th Cir.1991), wherein the Seventh Circuit held that to support a conviction under 18 U.S.C. § 401(1):

> the government must prove (of course beyond a reasonable doubt) that the misbehavior actually obstructed the administration of justice—by *delaying proceedings, making more work for the judge, inducing error, imposing costs on parties, or whatever.*

946 F.2d at 52 (emphasis added) (citing *In re McConnell,* 370 U.S. at 234, 82 S.Ct. at 1291). Courts of appeals which have addressed the issue since *Oberhellmann* have adopted, rather uncritically, the Seventh Circuit's definition of "actual obstruction." *See, e.g. American Airlines,* 968 F.2d at 532; *United States v. Time,* 21 F.3d at 641; *United States v. McGainey,* 37 F.3d at 684. The *Oberhellmann* definition of "actual obstruction" is consistent with the Fourth Circuit's approach to this element which is reflected in *Warlick,* 742 F.2d at 115–16 ("obstruction of the administration of justice requires ... some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process"). Therefore, in order to convict Grogan of criminal contempt in this case, there must be sufficient evidence such that a jury could find beyond a reasonable doubt that Grogan's filing of the note actually obstructed the administration of justice by delaying proceedings, making more work for the Court, inducing error, imposing costs on the Government, or otherwise interrupting the orderly process of the administration of justice or thwarting the judicial process.[14] This, of course, occurs any time that a court is required by a contemptuous act to devote time to one matter which would have been devoted to other judicial business. *Warlick,* 742 F.2d at 116 (finding "actual obstruction" where, as a result of the contemptuous act, the court and its staff conducted investigation which "took time that would have been used to try cases that were pending and ready for trial").

Furthermore, "whatever exactly 'actual obstruction' means, it requires, at a minimum, that the defendant's conduct have had an effect" on the proceedings. *Oberhellmann,* 946 F.2d at 53; *see also American Airlines,* 968 F.2d at 532 ("Actual obstruction of justice requires at a minimum that the defendant's conduct had an effect on the proceedings") (citing *Oberhellmann,* 946 F.2d at 53). And, "[a]n effect, in turn, presupposes a cause." *Oberhellmann,* 946 F.2d at 53. Consequently, proof of this element requires the prosecution to establish that the allegedly contemptuous conduct caused the effect that is the actual obstruction. *See Id.; American Airlines,* 968 F.2d at 532. This requirement of causation cannot be fully satisfied unless, "*but for*" the alleged misbehavior, the actual obstruction "would not have occurred, or at least would not have been as great as it was." *Oberhellmann,* 946 F.2d at 53. Thus, under *Oberhellmann,* where a proceeding would have concluded "on the same timetable and with the same consequences," no actual obstruction may be proven. *Id.* However, in order to be contemptuous, the conduct at issue need "not interfere with an ongoing proceeding immediately before the court." *United States v. Neal,* 101 F.3d at 997. It is also true that "[t]he requirement of proving an obstruction of justice ... cannot be satisfied by proof that the contempt proceeding itself, and such ancillary events as the complaint that touched it off, imposed costs, delays, etc." *Id.* Therefore, to support a finding of "actual obstruction" in this case, there must be sufficient evidence that Grogan's filing of the allegedly

§ 401 "would be inconsistent with the well-established principle that the contempt power is inherent in the courts."). That thorny subject need not be explored here because Show Cause Order II cites 18 U.S.C. § 401(1) as its predicate. To proceed on any other basis would be unfair, if not impermissible.

14. The formulation used in *Oberhellmann* is entirely too restrictive as is suggested by that court's use of the "whatever" catch-all category which concludes the list of "actual obstructions." *See Oberhellmann,* 946 F.2d at 52 ("delaying proceedings, making more work for the judge, inducing error, imposing costs on parties, *or whatever*") (emphasis added).

falsified note had an actual effect on the proceedings that were underway as to Show Cause Order I at the time the allegedly contemptuous act of tendering a falsified note in those proceedings. That can be established by, among other things, proof that, but for the filing of the note, the proceedings would have concluded on a different timetable or with different consequences. It also may be proved by establishing that but for the filing of the note, additional cost and work for the Government, or additional work by the judge or other court personnel, would not have occurred.

## DISCUSSION

In this case, there is sufficient evidence of actual obstruction of the administration of justice for a rational jury to find, beyond a reasonable doubt, that Grogan's filing of the allegedly falsified note caused delay in the original show cause proceedings (Show Cause Order I), additional work for the Government, and the expenditure of extra judicial resources.

First, there can be little question but that the filing of the note made it necessary for the Government to file the Notice of Intent to Offer 404(b) Evidence. The preparation of this pleading constituted additional work on the part of the Assistant United States Attorney which would not have been necessary but for the filing of the note. Indeed, the Government's pleading dealt exclusively with the issue surrounding the authenticity of Exhibit A, and the Government's challenge thereto.

Second, in response to the Government's Notice, Grogan filed a Motion for Continuance on August 27. The motion was based solely on Grogan's asserted need to delay the hearing on Show Cause Order I to permit him additional time to properly address the issues surrounding his filing of the note. *See* Motion for Continuance at 1–2 ("Because of the new development [filing of the note and challenge thereto], the issues raised in [the Government's] Notice ... and the complications attendant thereto, Grogan feels it is in his best interest that he ... retain private counsel. Grogan has secured the services of [counsel], contingent upon a Continuance being obtained"). A rational trier of fact could certainly find that the filing of Exhibit A was a but for cause of the Motion for Continuance. The filing of the Motion caused additional work for the Government and additional work for the Court because (i) the Government filed a responsive pleading to the Motion, *see* Response to Motion for Continuance (Aug. 28, 1996); and (ii) it was necessary for the Court to hold a telephone conference hearing on the record to resolve the Motion.

As discussed above, the only matters considered at that hearing were Grogan's filing of the allegedly falsified note and his resultant Motion for Continuance. The participants at this hearing were the district judge, the court reporter, AUSA Evans, and Grogan. There is sufficient evidence for a rational jury to conclude that this hearing would not have occurred but for the filing of the note and that the participation in the hearing constituted extra work for the Government, the Court and its staff.[15] Furthermore, the Court granted Grogan's motion by written order dated August 28, 1996, it held a second telephone conference on August 30 to set a new date for the hearing of Show Cause Order I, and it set the hearing for November 5 by written order dated that same day, all of which may rationally be found to have been extra work for the Court which consumed time that could have been devoted to other judicial business and which was directly attributable to Grogan's filing of allegedly falsified Exhibit A.

Third, a rational trier of fact could find on this record that Grogan's filing resulted in the delay of the hearing of Show Cause

15. Additionally, at the hearing the AUSA indicated that as a result of the continuance, she would have to telephone "several witnesses" who had been subpoenaed to appear at the originally scheduled August 30 show cause hearing to alert them to the rescheduling of the proceeding. *See* Tr. 8/28/96 at 4–5. A rational jury could properly find that this constituted extra work for the Government which would not have been necessary but for the filing of the note.

Also, the Court understands that the Government was required to retain and use expert assistance to assess the evidence respecting the writing, or the ink on the note, or both.

Order I.[16] *See Oberhellmann,* 946 F.2d at 52 (holding that misbehavior "actually" obstructs the administration of justice "by delaying proceedings"); *See Warlick,* 742 F.2d at 115–115 (misbehavior constitutes an "actual obstruction" where it "interrupt[s] the orderly process of the administration of justice, or thwart[s] the judicial process"). As a direct result of Grogan's filing of Exhibit A in response to Show Cause Order I and the Government's immediate challenge thereto, Grogan requested a continuance of the original show cause hearing which was then set for August 30, 1996. And, as a direct result of the filing of the allegedly falsified exhibit, the proceedings on Show Cause Order I were delayed from August 30 to November 5.[17] There is sufficient evidence for a rational jury to conclude that but for the filing of the note and "the commotion that followed," *Oberhellmann,* 946 F.2d at 53, the original show cause proceeding would not have been delayed but would have concluded on August 30. *See Id.* (actual obstruction occurs where proceedings are concluded on different "timetable" as a result of misbehavior). Certainly, a jury could find that Grogan's action in filing the note interrupted the orderly administration of justice or thwarted the judicial process as to Show Cause Order I.

Of course, in *Oberhellmann,* the Seventh Circuit held that there was insufficient evidence to find actual obstruction. And, it is on the rationale of that decision that Grogan contends, with the agreement of the Government, that the evidence is insufficient to establish that element here. However, the facts in this case are significantly distinguishable from those in *Oberhellmann.* There, the defendant, a tort lawyer, had hired a young lawyer named Howard Becker to assist him in his practice. Becker handled a particular case against the City of Mattoon, Illinois for Oberhellmann until Oberhellmann fired Becker. Fearing that Becker would settle that case against Oberhellmann's wishes, Oberhellmann drafted a notice of withdrawal of appearance which stated that Howard Becker "hereby withdraws as counsel for Plaintiff" and that "Oberhellmann will remain as counsel for Plaintiff." *Id.,* 946 F.2d at 51. Oberhellmann forged Becker's signature on this document and then filed it with the clerk of court. Oberhellmann subsequently learned that Becker had settled the case. He then called the city's counsel and told him that Becker had done so without authority. Oberhellmann followed up this call with two telegrams.

On that same day, Becker informed the district judge that Oberhellmann had forged his signature on the notice. Fearing that the settlement would not be enforced, the city, joined by Becker, moved the judge to enforce the settlement. The judge denied the motion, holding that his earlier dismissal order pursuant to Fed.R.Civ.P. 41(a)(2) had ended the case. Not satisfied, the city filed an interpleader suit to obtain a judicial determination of the respective rights of the parties. That action was eventually settled with an order confirming the original settlement entered into by Becker and the city. The district judge then instituted criminal contempt proceedings against Oberhellmann pursuant to 18 U.S.C. § 401(1) and Fed. R.Crim.P. 42(b).

The Seventh Circuit held that, on the factual record before it, there was insufficient evidence of "actual obstruction."

> [T]he requirement of causality, and hence of an effect of the defendant's contemptuous behavior and hence of an actual obstruction of justice, cannot be satisfied here unless, *but for Oberhellmann's forging of Becker's name to the withdrawal of appearance,* the commotion that followed—the motion to enforce the settlement, the denial of that motion, the interpleader suit, and the consequent delay in putting the settlement into effect—*would not have occurred, or at least would not have been as great as it was.* As far as can be determined from this record, it would have occurred anyway, and would have been just as great. Suppose that

16. Show Cause Order I (issued on August 6) dealt solely with Grogan's initial filing of the Petition on behalf of three people who allegedly did not authorize him to do so.

17. It should be noted that the Government was prepared to go forward with the show cause hearing as originally scheduled on August 30, 1996.

instead of filing a notice of withdrawal of appearance and mailing a copy to the city's lawyer, Oberhellmann had mailed just the cover letter, notifying the lawyer that Becker had acted without authority, and then, when he found out that Becker had, as he feared, settled the case, had followed up the letter with the phone call and the telegrams. The city's lawyer would still have joined with Becker in filing the motion to enforce the agreement, the motion would still have been denied, therefore the city would still have filed the interpleader suit, and that suit would have wended its way to a conclusion *on the same timetable and with the same consequences.* The only difference is that Becker would not have written a letter to Judge Mills complaining of Oberhellmann's forgery and Judge Mills would not have instituted a proceeding for criminal contempt.

*Id.* at 53 (emphasis added). That scenario does not remotely resemble what happened in this case.

In this case, a rational trier of fact could conclude that, but for the filing of the allegedly falsified note (Exhibit A), "the commotion that followed"—the filing of the Government's Notice, the motion to continue and the Government's response thereto, the telephone conference hearings, and the continuance of the hearing on Show Cause Order I—would not have occurred. Thus, unlike the situation in *Oberhellmann,* the ensuing delay in these judicial proceedings, as well as the extra work and costs imposed on the Government and the Court, would not "have occurred anyway." *Id.*

For purposes of this discussion only, the Court will assume that Grogan did, in fact, engage in "misbehavior" under 18 U.S.C. § 401(1) by altering the note. Suppose, then, that Grogan had not filed Exhibit A at all, or that he filed a photocopy of the note as it was allegedly presented to the AUSA on August 5—without the last sentence (*i.e.* without the language: "If not could you ask Ct. to issue show cause so I can refute"). In that case, the Government would not have filed its Notice, Grogan would not have requested a continuance, the ensuing related proceedings respecting the continuance would not have occurred, and the hearing on Show Cause Order I would not have been delayed. As a result of the filing of the falsified note (which is only presumed for purposes of analysis), however, the entire proceeding as to Show Cause Order I "wended its way to a conclusion," *id.,* on a far different timetable and with far different consequences than would have been the case had the note not been altered or if it had not been submitted at all. Therefore, the evidence is sufficient to support a finding of "actual obstruction." [18] *See Warlick,* 742 F.2d at 116 (finding actual obstruction where proceedings were delayed and the judge and court personnel were required to partake in extra work).[19]

18. Moreover, this case is further distinguishable from *Oberhellmann* in that this Court does not have the full panalopy of alternative remedies available to it as was the case in *Oberhellmann.* The *Oberhellmann* Court noted:

> [T]he remedies for wrongdoing are not limited to criminal sanctions, let alone to criminal contempt. Rule 11 of the Federal Rules of Civil Procedure provides mandatory sanctions for the signing of a knowingly false pleading.... The filing of a knowingly false statement with a federal court can be punished criminally under 18 U.S.C. § 1001.

946 F.2d at 53–54 (citations omitted) (also recognizing the alternative of a disciplinary proceeding). In this case, Rule 11 is inapplicable because the proceedings underlying the contempt charge were criminal in nature. And, the Supreme Court has recently held that 18 U.S.C. § 1001 does not apply to statements made to a federal court. *Hubbard v. United States,* U.S., 514 U.S. 695, 715–17, 115 S.Ct. 1754, 1765, 131 L.Ed.2d 779 (1995) ("a federal court is neither a 'department' nor an agency' within the meaning of section 1001"). Currently, then, § 401(1) is the only viable criminal sanction available to deter and punish fraudulent pleadings (unless there is inherent power to do so—see fn. 13 *supra*). That alone, of course, would not warrant a conclusion of actual obstruction but, to the extent that the decision in *Oberhellmann* was driven by these differences, they certainly are not available here.

19. Furthermore, the Fourth Circuit recently has emphasized that " '[d]eceit by an attorney may be punished as contempt [under 18 U.S.C. § 401(1)] if the deceit is an abuse of the functions of his office.' " *Warlick,* 742 F.2d at 117 (holding that actions by attorney, committed in the presence of the court, in using jury information that was illegally obtained constituted "an abuse of the functions of his office") (quoting *Clark v. United States,* 289 U.S. 1, 12, 53 S.Ct.

If it were otherwise, as Grogan and the Government suggest, any person defending a show cause order on one matter could submit, with absolute impunity, false evidence in response to that show cause order. That, of course, is precluded if the facts are put in proper chronological perspective. Show Cause Order I was issued August 6, setting a hearing date for August 30. The filing, by Grogan, of the allegedly falsified note in response to that show cause order caused a delay in the resolution of those proceedings. The mere fact that thereafter the Court issued Show Cause Order II which contained two counts, one of which was the subject of Show Cause Order I, does not mean that the delay, work and expense caused by the filing of the note cannot be considered as proof of actual obstruction of the administration of justice respecting the proceedings on Show Cause Order I.

Suppose, for example, that Count Two had been the subject of a separate order. Surely, no one would contend that the delay in resolving the original show cause proceedings was not an actual obstruction of the administration of justice in those proceedings. Neither *Oberhellmann* nor any other authority on the subject suggests such a result.

Yet, that is the essence of the positions taken by Grogan and the Government. Their view seems to be that none of the delay after the filing of the allegedly falsified note can be considered an actual obstruction of the administration of justice because Grogan himself asked for the ensuing delay by requesting a continuance in the hearing on Show Cause Order I.

However, the cause of the delay in the original show cause proceedings was not Grogan's request. It was, instead, his conduct in filing an allegedly false document to support his position that he should not be sanctioned for conduct (falsely representing that he had authority to file on behalf of three people) that is not the subject of Count Two of the instant criminal contempt proceedings.

Clearly, neither the extra work, cost or delay attendant to the Count Two criminal contempt proceeding itself, nor the ancillary events that "touched it off" (i.e. the November 5 Rule 42(b) notice hearing), may properly form the evidentiary basis for a finding of actual obstruction on Count Two. *See Oberhellmann,* 946 F.2d at 53; *American Airlines,* 968 F.2d at 532. In this case, the "ancillary events" which touched off the instant contempt proceeding began with Grogan's filing of "Respondent's Motion to Determine Criminal Exposure" on September 26, 1996. Therein, for the first time during these proceedings, the issue of a criminal contempt proceeding under Fed.R.Crim.P. 42(b) was raised. The Court eventually initiated a Rule 42(b) contempt proceeding, and in accordance with that rule, *sua sponte* delayed the original show cause hearing set for November 5 until January 24, 1997. *See* Fed.R.Crim.P. 42(b) (requiring court to provide notice and "a reasonable time for the preparation of the defense"). Clearly, that delay is not countable towards the actual obstruction of administration of justice element. *See Oberhellmann,* 946 F.2d at 53; *American Airlines,* 968 F.2d at 532, and neither is the substantial amount of extra work by the Government and the Court in preparation for the instant criminal contempt proceedings. That, of course, does not mean that the conduct which is the subject of Count Two cannot be the causative agent for the delay in the proceedings in Show Cause Order I which constitutes the actual obstruction of the administration of justice in Count Two.

It is of no consequence that the period of delay in the original show cause proceedings was relatively short (two months) or that the ultimate consequences of Grogan's filing on the administration of justice were not catastrophic. Whereas these observations may be relevant considerations in determining the appropriate sentence if Grogan is ultimately convicted, they are of no import at this stage of the proceedings. *See Waste Conversion, Inc. v. Rollins Environmental Services, Inc.,* 893 F.2d 605, 614 (3rd Cir.1990) (en banc) (Scirica, J. dissenting). Upon sufficient proof

465, 468, 77 L.Ed. 993 (1933) (citing *Bowles v. United States,* 50 F.2d 848, 851 (4th Cir.1931)))); *but see Cammer v. United States,* 350 U.S. 399, 404–05, 76 S.Ct. 456, 458–59, 100 L.Ed. 474 (1956) ("a lawyer is not a court 'officer' within the meaning of § 401(2)").

of the three other elements, the offense of criminal contempt is complete upon a showing of any material obstruction of the administration of justice. *See United States v. Seale,* 461 F.2d 345, 369 (7th Cir.1972) ("the standard to be applied is one of material disruption or obstruction"). In this case, there is no question that the evidence supports a rational finding of an actual, material obstruction of the administration of justice.[20] Upon such a showing, the focus shifts to the gravamen of a criminal contempt action—the alleged misconduct on the part of defendant, which in this case consists of the extremely serious charge of altering exhibits submitted to the Court. *See United States v. Seale,* 461 F.2d at 369 ("the seriousness of the misbehavior bears on what conduct may be found materially obstructive").

For the reasons set forth in this Memorandum Opinion, the Government's Motion to Dismiss Count Two of the Order to Show Cause is denied.[21]

Accordingly, Count Two of Show Cause Order II will proceed to trial by jury. Because of the Government's belatedly filed motion, however, it is necessary to continue the trial, appoint a special prosecutor[22] and

20. *See United States v. Seale,* 461 F.2d 345, 370 (7th Cir.1972) ("the very delay of the proceedings occasioned by ... misbehavior may be sufficient to constitute a material obstruction. Thus, if a not insubstantial delay is entirely unnecessary ... the requisite obstruction would be present."); *Vaughn v. City of Flint,* 752 F.2d 1160, 1168 (6th Cir.1985) (misconduct caused sufficient "confusion and delay" where district judge conducted a brief voir dire of contemnor); *United States v. Jackson,* 891 F.2d 296, 296 (9th Cir.1989) (unpublished) (material obstruction and delay found as a result of brief colloquy between judge and contemnor).

21. The Government inexplicably concludes its Motion to Dismiss with the following statement:

> [T]he government intends by this motion to withdraw the criminal contempt prosecution and to submit the matter to the District Court for possible disciplinary action against Mr. Grogan pursuant to the local rules.

The only possible authority for such action on the part of the Government could be in Fed. R.Crim.P. 48(a), which provides that the "United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate." First, the Government has not sought the "leave of court." Moreover, the Order to Show Cause is not an "indictment, information or complaint" within the purview of Rule 48(a). *See United States ex rel. Vuitton et fils S.A. v. Karen Bags Inc.,* 592 F.Supp. 734 (S.D.N.Y.1984) ("One aspect of contempt which separates it from other criminal offenses is the provision, in Rule 42, for the initiation of proceedings by notice, rather than by indictment or information.") (citing *Green v. United States,* 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958)), *rev'd on other grounds sub nom Young v. U.S. ex rel Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); *see also* Advisory committee Note to Rule 48(a) (the word "complaint" applies only where the defendant has been bound over to the district court before the return of an indictment). For those reasons, the last sentence of the Government's motion is of no efficacy whatsoever.

22. In accordance with the Supreme Court's teachings in *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), this Court initially requested that the United States Attorney's Office prosecute the instant criminal contempt action. In Young, the Court emphasized that

> a court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied. Such a procedure ensures that the court will exercise its inherent power of self-protection only as a last resort.

*Id.* at 801, 107 S.Ct. at 2134–35; *see also United States v. Providence Journal Company,* 485 U.S. 693, 696 n. 3, 108 S.Ct. 1502, 1505 n. 3, 99 L.Ed.2d 785 (1988) (same).

The Court added that, "[i]n practice, courts can reasonably expect that the public prosecutor will accept the responsibility for prosecution." *Id.* (citing United States Attorney's Manual § 9–39.318 (1984) ("In the great majority of cases the dedication of the executive branch to the preservation of respect for judicial authority makes the acceptance by the U.S. Attorney of the court's request to prosecute a mere formality ...")).

In this case, however, the United States Attorney's Office has indicated, through its Motion to Dismiss and its statements in open court, its unwillingness to prosecute the criminal contempt action based on its misperception of the sufficiency of the evidence of actual obstruction. In such an instance, it is necessary, and indeed appropriate, for the Court to appoint a special prosecutor. *See Young,* 481 U.S. at 801, 107 S.Ct. at 2134–35; *United States v. Neal,* 101 F.3d 993, 996 (4th Cir.1996) (citing *Id.*); *see also United States v. Vlahos,* 33 F.3d 758, 762 (7th Cir.1994) (appointment of special prosecutor in criminal contempt action is appropriate only where the United States Attorney's Office had "constructively refused" to prosecute or was "ill prepared or lacked sufficient ability to prosecute

set a new trial date. All of that will be done forthwith.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record and to counsel for Alice Dean Van Dagenhardt.

It is so ORDERED.

the case before the district court." (citing *Young*, 481 U.S. at 801, 107 S.Ct. at 2134–35).